IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-190-F

| | |
|---|---|
| MORRIS W. CONNER, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -18] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Morris W. Conner ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant filed a response to Defendant's motion [DE-21], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on July 25, 2012, alleging disability beginning May 15, 2012. (R. 9, 188-97). His claim was denied initially and upon reconsideration. (R. 9, 61-115). A hearing before the Administrative Law Judge ("ALJ") was held on December 5, 2013, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 9, 24-50). On March 7, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 6-23). On June 30, 2015, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since the alleged onset date. (R. 11). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the cervical spine, arthritis in the right knee, depression/anxiety, and alcoholism, as well as the nonsevere impairment of hypertension. (R. 11-12). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12-14). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in social functioning and moderate difficulties in activities of daily living and in concentration, persistence, or pace with no episodes of decompensation of an extended duration. (R. 13).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform work light work[1] with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional kneeling, crouching, and crawling; avoid working at unprotected heights; and simple, routine, repetitive tasks in an environment where changes are infrequent and are introduced gradually. (R. 14-18). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 15-16). At step four, the ALJ concluded Claimant is unable to perform any past relevant work. (R. 18). Nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

other employment opportunities that exist in significant numbers in the national economy. (R. 19-20).

Claimant contends the ALJ erred in failing to properly evaluate the medical opinion evidence, failing to adequately explain how his moderate limitations in concentration, persistence, or pace were accounted for in the RFC, and failing to perform a function-by-function analysis. Pl.'s Mem. [DE-17] at 1, 8-14.

## V. DISCUSSION

### A. The Medical Opinion Evidence

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking

5

into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

    i.    **Dr. Locklear's Opinion**

Claimant first contends the ALJ erred by failing to explain the weight attributed to the opinion of Dr. Locklear, a consultative examiner, that Claimant is capable of walking short distances and standing for short periods of time. Pl.'s Mem. [DE-17] at 8-10; Pl.'s Resp. [DE-21] at 1-3. Defendant concedes that the ALJ erred in failing to assign a weight to Dr. Locklear's opinion, but suggests the error was harmless. Def.'s Mem. [DE-19] at 10-11. The ALJ's failure to weigh Dr. Locklear's opinion was not harmless and requires remand.

Dr. Locklear performed a consultative examination of Claimant on October 9, 2012. (R. 271-75). The ALJ summarized Dr. Locklear's relevant findings as follows:

6

> Dr. [Locklear] noted that there was no crepitus in the knees or other joints and the claimant demonstrated a steady gait without the use of a cane or other assistive device. The claimant was noted to have difficulty walking on his heels or toes and to squat and rise. Somewhat decreased ranges of motions were observed in his lumbar spine, shoulders, hips, and knees. Dr. [Locklear] diagnosed the claimant with history of right knee open reduction and internal fixation, chronic right knee pain, chronic lower back pain, multiple arthralgias, and uncontrolled hypertension. He concluded that the claimant was able to walk short distances and stand short periods of time. He recommended follow up with an orthopedist for imaging records on his right knee and with a medical doctor for evaluation of his hypertensive symptoms (Exhibit 3F).

(R. 17). The ALJ did not weigh Dr. Locklear's opinion that Claimant was able to walk short distances and stand for short periods of time, and the failure to do so was error. S.S.R. 96-2p, 1996 WL 374188, at *5. Defendant invites the court to find this error harmless, arguing that the ALJ's reliance on the state medical reviewers' opinions implicitly demonstrates the ALJ found Dr. Locklear's opinion to be inconsistent with the medical evidence of record and Claimant's work history. Def.'s Mem. [DE-19] at 10-11. However, the ALJ's conclusory reasons for affording great weight to the state medical reviewers' opinions do not provide a sufficient explanation for why the ALJ rejected Dr. Locklear's opinion that Claimant was able to walk short distances and stand for short periods of time.

The ALJ determined Claimant could perform a limited range of light work (R. 14), which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983). This is at odds with Dr. Locklear's assessment that Claimant could walk short distances and stand for short periods of time. In affording great weight to the state agency reviewers' opinions, the ALJ noted "the medical evidence of record is nonexistent before the claimant's initial consultative examination secondary to his application for disability benefits" and the "opinion is consistent with and supported by the medical evidence of

7

record as well as the claimant's work history." (R. 18). Neither of these reasons adequately explains why the ALJ rejected Dr. Locklear's opinion in favor of those of the non-examining reviewers that Claimant could walk or stand for six hours in an eight-hour workday. *See Ebison v. Colvin*, No. 4:14-CV-135-FL, 2015 WL 5725643, at *6 (E.D.N.C. Sept. 30, 2015) (unpublished) (remanding for failure to sufficiently explain the weight afforded a medical opinion where "[t]he ALJ's opinion fails to provide any reasoning connecting plaintiff's ability to stand or walk in an instant with plaintiff's ability to stand or sit for a specified period of time."); *Cotton v. Colvin*, No. 5:14-CV-00425-FL, 2015 WL 5725518, at *7 (E.D.N.C. Aug. 12, 2015) (unpublished), *adopted by* 2015 WL 5714912 (E.D.N.C. Sept. 29, 2015) (concluding "where the limitations contained in Dr. Burt's opinion conflict with the ALJ's RFC determination, the ALJ's failure to state the weight given to Dr. Burt's opinion is not harmless error, as the weight afforded the opinion is not discernible from the decision and the ALJ's grounds for discounting the opinion are not reasonably articulated.").

The first reason provides no explanation as to why the state agency reviewers' opinions would be entitled to more weight than the consultative examiner's opinion and is somewhat undermined by the ALJ's finding that "it is reasonable to think that the claimant's arthritic condition could worsen over time resulting in increased pain with certain movements." (R. 16). The second reason is conclusory and, likewise, undermined by the ALJ's own assessment of the medical evidence. *See Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *6 (4th Cir. Dec. 17, 2015) (unpublished) (characterizing as "cursory and conclusory" the ALJ's determination that the treating physician's opinion regarding the claimant's limitations was "not well[-]supported by the medical record," which did not allow for meaningful review of the ALJ's decision). The ALJ acknowledged imaging records in follow-up to Dr. Locklear's examination that revealed osteoarthritic changes of

8

the right knee with narrowing of the medial compartment as well as two cancellous screws traversing the proximal tibial metaphysis. (R. 16-17). The ALJ further acknowledged that Claimant "presented on multiple occasions with complaints of right knee pain." (R. 16). The ALJ noted that although Claimant's right knee injury was remote and he continued to perform heavy exertional work for years thereafter, "it is reasonable to think that the claimant's arthritic condition could worsen over time resulting in increased pain with certain movements." (R. 16). This evidence arguably supports Dr. Locklear's opinion regarding Claimant's restricted ability to walk and stand and is at odds with the ALJ's reason for affording great weight to the agency reviewers' opinions. Finally, the Fourth Circuit Court of Appeals has found that the rejection of a treating physician's opinion without explanation "in favor of the state medical examiners . . . raises red flags because the state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians." *Radford v. Colvin*, 734 F.3d 288, 295-96 (4th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). Although Dr. Locklear is not a treating physician, he is an examining source and, thus, his opinion is generally entitled to more weight than that of a non-examining source such as a state medical reviewer. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). The ALJ failed to weigh Dr. Locklear's opinion, and it is not apparent from ALJ's decision why he rejected the limitation to walking short distances and standing for short periods of time. Moreover, this case is not so "one-sided" that the ALJ's error must be considered harmless, *Brown v. Colvin*, 639 F. App'x 921, 921 (4th Cir. 2016) (unpublished), and it is not the province of the court to weigh medical opinions in the first instance, *Radford*, 734 F.3d at 296. Accordingly, because the court is unable to determine whether the ALJ's decision in this regard is supported by substantial evidence, it is recommended the matter be remanded for the ALJ to evaluate and explain the weight afforded

9

Dr. Locklear's opinion.

### ii.  Dr. Akpaka's Opinion

Claimant next contends that the ALJ erred in assigning little weight to the opinion of Dr. Akpaka, a consultative psychological examiner, that Claimant would have difficulty performing simple, routine, repetitive tasks. Pl.'s Mem. [DE-17] at 10. Claimant specifically argues that while the ALJ noted Claimant's mental status exam was essentially normal, he failed to consider the Wechsler Memory Scale ("WMS") testing that supported Dr. Akpaka's opinion. *Id.* Defendant contends that the ALJ appropriately gave little weight to Dr. Akpaka's opinion because his notes did not support his opinion, the ALJ was not required to specifically discuss the WMS test, and the ALJ gave great weight to the opinions of the state agency reviewers who reviewed Dr. Akpaka's examination, including the WMS test. Def.'s Mem. [DE-19] at 12-13. The ALJ failed to sufficiently explain why he gave little weight to Dr. Akpaka's opinion.

Dr. Akpaka performed a consultative mental status examination of Claimant on August 24, 2012. (R. 267-70). Dr. Akpaka noted Claimant's reported mood and memory problems, that he was responsive and motivated to participate in the assessment, but cautioned that the test results may slightly underestimate his abilities due to hand tremors and possible poor vision. (R. 267-68). Dr. Akpaka performed a mental status examination, which was unremarkable in the areas of attitude and behavior, speech, thought process and content, and perceptual experiences. (R. 268). In the area of emotional state, Dr. Akpaka noted Claimant was irritable and Claimant responded that his mood was "very depressed" when asked. *Id.* In the area of cognition, Dr. Akpaka noted several deficiencies:

> Claimant's orientation to person, time, place, and situation is normal; he easily provides his name and knows his location, the approximate time, and the reason for his appointment. His immediate retention and recall, recent memory, and his remote

10

memory are below average; he demonstrates below average WMS-IV immediate and delayed memory. His fund of information is below average; he provides the names of five large cities, as "Fayetteville, Lumberton, Whiteville, Elizabethtown, and Raleigh" and provides the name of the current president of the United States and three before him, as "Obama, I don't remember." Calculation is fair; claimant is unable to perform the serial 7s task but adds $5 + $4 = $9 and subtract $10-$6 = $4, Abstract thinking is below average; orange and banana are alike because "they are fruits["] and bicycle and train are alike because "They are not alike." Judgment is below average. When asked what he would do if he found a sealed, addressed, and stamped envelope in the street, the claimant replied, "Leave it there." When asked how he would find his way out if he was lost in the forest in the daytime, he replied, "Keep walking and talk to trees." Claimant demonstrates good insight into his medical and mental health issues and acknowledges the need for help. Current level of intellectual functioning is estimated to be in the below average range, based on the degree to which he articulated his thoughts and feelings throughout the assessment.

*Id.* Dr. Akpaka administered WMS testing to measure learning and memory functioning, and Claimant "demonstrated below average performance in all areas assessed with the WMS-IV." (R. 268-69). More specifically, Dr. Akpaka described the test results as follows:

> His immediate memory and his delayed memory are in the extremely low range suggesting that his immediate and delayed memory capacities are significantly impaired. His visual working memory index score is also in the extremely low range suggesting a significantly impaired capacity to remember and manipulate visually presented information in short-term memory storage. However, as earlier indicated, the test results may slightly underestimate his abilities due to his hand tremors and probable poor vision.

(R. 269). Dr. Akpaka diagnosed Claimant with alcohol dependence, mood disorder NOS, cognitive disorder NOS, rule out major depressive disorder, and a Global Assessment Functioning ("GAF") score of 53. Dr. Akpaka concluded,

> Mr. Conner is a 48-year-old male referred for psychological evaluation by NCDDS to assess his current mental status and memory functioning; objective testing suggests that he has significantly impaired memory functioning, and clinical and collateral interviews indicates a history of alcohol abuse and the presence of significant mood symptoms. His overall presentation is suggestive of alcohol dependence, cognitive disorder not otherwise specified, and mood disorder not otherwise specified versus major depressive disorder. From observations and as reflected on the test data, Mr.

11

> Conner would have a hard time understanding and responding to directions and performing simple repetitive tasks and routine without supervision. His mental ability to perform tasks that require sustained concentration and persistence and tolerate the stress associated with day-to-day regular work activity is significantly limited by his mood symptoms and his impaired memory functioning and estimated below average intellectual functioning. . . . Mr. Conner would likely need external supervision to manage his benefits, if awarded; he had trouble with the basic arithmetic skills of addition and subtraction.

*Id.*

The ALJ summarized Dr. Akpaka's findings as follows:

> The claimant reported that he experienced depression and anxiety, but he had received no treatment and did not use prescribed medications for his conditions. Dr. Akpaka noted an essentially normal interview with the exception of irritability and memory problems. Dr. Akpaka assessed the claimant with a mood disorder and a cognitive disorder as well as alcohol dependence.

(R. 17). The ALJ afforded Dr. Akpaka's opinion little weight, explaining as follows:

> In Dr. Akpaka's report, he stated that the claimant's mental status interview was essentially normal with the exception of irritability and poor memory. Dr. Akpaka concluded that the claimant would have difficulty responding to directions or performing simple tasks without supervision. The undersigned has further reduced the claimant's residual functional capacity assessment to include only simple routine, repetitive tasks in a low stress work environment to accommodate his mental health issues.

(R. 18). The ALJ's assessment of Dr. Akpaka's opinion provides no insight as to why he rejected Dr. Akpaka's conclusion that Claimant would have difficulty "understanding and responding to directions and performing simple repetitive tasks and routine without supervision." (R. 269).

Defendant first argues that Dr. Akpaka's notes are inconsistent with his opinion, because he had some normal mental examination findings and a GAF score of 53, indicating only moderate symptoms. Def.'s Mem. [DE-19] at 12. However, this ignores Dr. Akpaka's findings regarding Claimant's mood and memory. (R. 269) (concluding Claimant's "mental ability to perform tasks

12

that require sustained concentration and persistence and tolerate the stress associated with day-to-day regular work activity is *significantly limited by his mood symptoms and his impaired memory functioning and estimated below average intellectual functioning.*") (emphasis added). The fact that Claimant had normal speech, coherent thought process, and was oriented to time and place does not address or contradict Dr. Akpaka's finding that Claimant's mood symptoms and impaired memory would significantly limit his ability to perform even simple, routine tasks. *See Ebison*, 2015 WL 5725643, at *5 (finding similarly that the ALJ's reliance on a claimant's ability to walk did not address the claimant's need for a sit-stand option) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (recognizing the similar principal "the ability to perform simple tasks differs from the ability to stay on task")).

Next, Defendant asserts that the ALJ did consider Claimant's poor memory function and was not required to discuss the WMS testing. Def.'s Mem. [DE-19] at 12. Defendant is correct that the ALJ need not discuss every piece of evidence. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]") (citations omitted). However, the ALJ may not ignore material evidence that conflicts with his decision. *See Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL 965626, at *3 (E.D.N.C. Mar. 4, 2015) (unpublished) ("[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision.") (quoting *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citation omitted)). It is curious that the ALJ expressly noted Claimant's poor memory and Dr. Akpaka's finding that it would cause difficulty responding to directions or performing simple tasks without supervision, but then rejected the opinion without explanation. Dr. Akpaka's conclusion regarding Claimant's significantly impaired memory is supported by the WMS

13

test results. Dr. Akpaka characterized Claimant's scores as "extremely low" suggesting his memory was "significantly impaired." (R. 269). Dr. Akpaka noted that average scores were 90 through 110 and Claimant's scores were 49 in auditory memory, 46 is visual memory, 56 in visual working memory, 45 in immediate memory, and 44 in delayed memory, placing Claimant in the < 0.1 percentile in all categories but one. *Id.* Furthermore, the ALJ's restriction limiting Claimant to "a low stress work environment" (R. 18) does not address the limitations opined to by Dr. Akpaka, who did not suggest Claimant could not handle stressful environments, but rather that Claimant's ability to "tolerate the stress associated with *day-to-day regular work activity* is significantly limited by his mood symptoms and his impaired memory functioning and estimated below average intellectual functioning." (R. 269) (emphasis added).

Finally, Defendant points out that the ALJ gave significant weight to the opinions of the state agency reviewers who both reviewed Dr. Akpaka's examination, including the WMS test. Def.'s Mem. [DE-19] at 12-13; (R. 17-18, 67, 105). The state agency reviewers opined that the record suggested Claimant's mental impairments would be "considerably ameliorated by sobriety" and that Claimant could understand, remember, and carry out short simple instructions. (R. 74-75, 105, 109-10). First, the ALJ did not indicate that he discounted Dr. Akpaka's opinion because it was contradicted by that of the state agency reviewers. However, to the extent the ALJ did rely on the assessments of the state agency reviewers in discounting Dr. Akpaka's opinion, he did not sufficiently explain why the opinions of these non-examining sources were given more weight than that of an examining source. *Radford*, 734 F.3d at 295-96; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Accordingly, it is recommended that on remand the ALJ provide further explanation for the weight afforded Dr. Akpaka's opinion.

14

The issues raised in Claimant's remaining assertions of error—failing to adequately explain how his moderate limitations in concentration, persistence, or pace were accounted for in the RFC and failing to perform a function-by-function analysis—may be impacted by the ALJ's further consideration of the consultative examiner's opinions. For example, both Dr. Locklear and Dr. Akpaka opined that Claimant would have greater limitations than reflected in the RFC as determined by the ALJ with respect to Claimant's ability to walk and stand or to perform simple, routine, repetitive tasks. Accordingly, it is recommended that these issues receive additional consideration on remand, as necessary, in light of the ALJ's further consideration of the consultative examiner's opinions. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) (unpublished) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by* 2012 WL 3580054 (E.D.N.C. Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-18] be DENIED, and the case be REMANDED for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 22, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or

15

return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 8th day of August 2016.

Robert B. Jones, Jr.
United States Magistrate Judge